1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

# SOUTHERN DISTRICT OF CALIFORNIA

7

8  JOHN SCOTT McCLINTOCK,                          CASE NO. 05cv1510-LAB (WMc)

9                               Petitioner,        **ORDER OVERRULING**
                                                   **OBJECTIONS, ADOPTING**
10       vs.                                       **REPORT AND**
                                                   **RECOMMENDATION,  AND**
11  JAMES YATES, Warden, et al.,                   **DENYING HABEAS PETITION**

12                               Respondents.      [Dkt Nos. 24, 31, 32]

13       This matter is before the court on the Report and Recommendation ("R&R") of

14  Magistrate Judge William McCurine, Jr. that petitioner John Scott McClintock's ("McClintock")

15  Second Amended Petition for 28 U.S.C. § 2254 habeas corpus relief and his request for an

16  evidentiary hearing be denied.  Only McClintock, a state prisoner proceeding *pro se,* filed

17  Objections to the R&R.  Respondents filed no Reply.  For the reasons discussed below, the

18  R&R is **ADOPTED**, and the Petition is **DENIED**.

19  **I.    BACKGROUND**

20       MClintock was a forty-year-old reconstructive surgeon at the time of his trial.  He was

21  convicted by a jury in September 2002 of:  eight counts of committing a lewd and lascivious

22  act on a child under the age of fourteen in violation of CAL. PEN. CODE § 288(a); three counts

23  of molesting a minor in violation of CAL. PEN. CODE § 647.6(a); one count of petty theft in

24  violation of CAL. PEN. CODE § 484; three counts of committing a lewd and lascivious act on

25  a child aged fourteen or fifteen years in violation of CAL. PEN. CODE § 288(c)(1); and fifteen

26  counts of possessing matter depicting a minor in sexual conduct  in violation of CAL. PEN.

27  CODE § 311.11(a).  The jury found true more than one victim under the age of fourteen was

28  involved in the eight CAL. PENAL CODE § 288(a) counts of which he was convicted.

McClintock was acquitted of seven other charged counts:  five under CAL. PEN. CODE § 288(a); one under CAL. PEN. CODE § 288(a)(1); and one misdemeanor count under CAL. PEN. CODE § 647.6(a).   R&R 3:2-12, Lodg. 1 at 572, 574-75, 578-79, 582.   McClintock was sentenced on January 9, 2003 to thirty years to life in state prison, consisting of two consecutive terms of fifteen years to life, with all other counts and sentences ordered to run concurrently.  R&R 3:12-14, Lodg. 1 at 607-08.

In his Second Amended Petition ("SAP"), McClintock asserts six grounds for habeas relief: (1) denial of a severance motion; (2) admission of expert testimony regarding five specific issues relating to abused children from a prosecution witness, Deborah Davies, after an evidentiary hearing; (3) ineffective assistance of counsel; (4) prosecutorial misconduct; (5) denial of a continuance McClintock requested after he became ill during the trial;  and (6) cruel and unusual punishment associated with his 30-years-to-life sentence.  Dkt No. 24. He had appealed his conviction to the state appellate court raising, among other things, four of his six SAP claims (one, two, five, and six).  His conviction was affirmed. Lodg. 3, 6.  The California Supreme Court summarily denied his petition for review. Lodg. 7.  He raised the other two claims presented in the SAP in a habeas petition to the state supreme court, which that court summarily denied in June 2006.[1]   R&R 3:21-24.  All the SAP claims are accordingly exhausted and ripe for federal habeas review.

The R&R takes facts from the California Court of Appeal opinion deciding McClintock's direct appeal.  "[A] determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner carries his "burden of rebutting the

---

[1]  The docket reveals McClintock first filed his federal petition in July 2005.  In December 2005. Respondents moved to dismiss or to hold the petition in abeyance pending exhaustion of state judicial remedies. McClintock opposed the motion. Judge McCurine entered an R&R in March 2006 recommending the motion to stay be denied but the motion for stay and abeyance be granted.  This court rejected the R&R, ordered the filing of explanations and responses from the parties, and the preparation of a new R&R.  This court adopted the new R&R and denied the motion for dismissal or stay and abeyance in its entirety as moot.   McClintock filed a First Amended Petition on September 1, 2006, and an authorized SAP on September 28, 2006.  Respondents filed a Response on November 2, 2006.  McClintock filed a Traverse on December 1, 2006.  He moved for appointment of counsel on June 4, 2007, a request Judge McCurine denied without prejudice on September 10, 2007.  The R&R under review herein issued January 28, 2008, and McClintock filed the only Objections on February 15, 2008.

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).
McClintock reargues the grounds of his SAP in his Objections to the R&R, but identifies no
error in the summary of the factual or procedural background recited in the R&R.   The court
adopts the R&R summaries of the factual and procedural history of this case.

The R&R summarizes the underlying criminal conduct in categories:  the summer
2001 beach and pool molestations of ten-year-old twins (sons of McClintock's female
acquaintance) and three of their friends and a 2001 bedroom molestation of one of the twins;
the 1999 bedroom molestation of his then-stepson; the July 2001 petty theft charges for
shoplifting two shirts and two envelopes of developed film containing photographs of boys;
and the September 2001 child pornography charges arising from the results of Chula Vista
police officers' executing search warrants at McClintock's medical office, his residence, and
his car (including but not limited to his desktop computer containing many thousands of such
images).   Evidence of prior uncharged acts are summarized as a 1994 incident of
molestation of a thirteen-year-old boy and three other incidents that year with a nine-year-old
boy.   R&R pp. 4-6.  McClintock's defense at trial is summarized at R&R pages 6-7,
essentially an attempt to characterize the contacts as not sexually intended and the
shoplifting as unintentional while he responded to a telephone page from the hospital by
stepping outside the store.

McClintock does not attempt to specify why the R&R is erroneous or contrary to law.
Rather, his fifteen pages of Objections reargue his explanations for the conduct he admitted,
rationalize his touching of the children, recharacterize some of the contact as not sexually
intended, and describe others as requested contact.  He contends the children themselves
took some of the photographic evidence used against him, and reasserts other of his
defense theories.  He summarily argues the jury could not have reached their results beyond
a reasonable doubt, among other broad-brush attacks on his convictions and sentence, and
requests an evidentiary hearing to prove his arguments.[2]  A federal court reviewing a habeas

---

[2]  In his R&R Objections, McClintock asks this court to "reconsider" the recommended denial
of his Petition in its entirety and to grant an evidentiary hearing so he can demonstrate the merits of
his arguments.  Obj. 15:8-12.  Since AEDPA, 28 U.S.C. § 2254(e) "now substantially restricts the

challenge to a state prisoner's conviction or sentence is not empowered to retry the case or to substitute its judgment for that of a jury or the state court. The court attempts to extract from McClintock's SAP and his Objections to the R&R potentially cognizable claims under the applicable federal standards, but rejects his gratuitous rearguing of the evidence and of his defense theories where they are immaterial to any federal constitutional claims he attempts to raise.[3]

## II.    DISCUSSION

### A.    Legal Standards

#### 1.    Habeas Relief

"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 habeas proceedings thus measure state convictions against federal constitutional requirements applicable to the states. Only errors of constitutional magnitude will support

---

district court's discretion to grant an evidentiary hearing." Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999). If a habeas petitioner "failed to develop the factual basis of a claim in State court proceedings," the federal court cannot hold an evidentiary hearing unless certain statutory requirements are met. See 28 U.S.C. § 2254(e)(2); Bragg v. Galaza, 242 F.3d 1082 (9th Cir. 2001). The court finds McClintock advances no support for either required showing, i.e., (A) the claim relies on "(i) a new rule of constitutional law made retroactive by the Supreme Court that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). Moreover, even if the court had discretion to hold an evidentiary hearing, it is unpersuaded by McClintock's request based as it is on his attempts to convince the court the jury simply should have reached different conclusions, which he proposes to demonstrate at an evidentiary hearing.

[3]   For example, McClintock challenges the prosecutor's charging decision with respect to the number of counts of child pornography as "extreme and harmful exaggerations," despite the volume of many thousands of images seized. R&R Obj. pp. 4-5. The charges selected appear to be amply supported by the evidence, and federal courts do not and cannot involve themselves in legitimate decisions the State makes about how to prosecute a criminal case. Moreover, federal habeas courts have no authority to review a state's application of its own laws. Jackson, 921 F.2d at 885. The prosecutor's selection from among charging options supported by the evidence raises no federal constitutional question. Similarly, the characterization of physical contacts as "soft touch" or "specific sexual acts" constituting felony molestations (R&R Obj. pp. 4-5) are questions for the factfinder which will not be disturbed in proceedings seeking collateral relief, absent a demonstrated constitutional violation in reaching the verdicts not apparent from this record.

1    federal intervention in state judicial proceedings, and only to correct such errors.  *See*

2    Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989); Jackson v. Ylst, 921 F.2d 882,

3    885 (9th Cir. 1990).

4         A writ petition decided under the 1996 standards enacted through the Antiterrorism

5    And Effective Death Penalty Act ("AEDPA") will not be granted unless the state court

6    decision denying a claim on the merits "resulted in a decision that was contrary to, or

7    involved an unreasonable application of, clearly established Federal law, as determined by

8    the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *see* Baylor v. Estelle, 94

9    F.3d 1321, 1325 (9th Cir. 1996); Carey v. Musladin, -- U.S. --, 127 S.Ct. 649 (Dec. 11, 2006).

10   To satisfy the AEDPA requirement the federal law the petitioner relies on was "clearly

11   established," a reviewing court must look to the law as it existed in United States Supreme

12   Court rulings at the time the challenged state court decision was rendered.  Williams v.

13   Taylor, 529 U.S. 362, 390 (2000); *see* Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

14        A state court decision is "contrary to" clearly established precedent if the decision

15   "contradicts the governing law set forth in [the Supreme Court's] cases." Williams, 529 U.S.

16   at 405.  The "unreasonable application" test is objective unreasonableness of the state

17   court's application of "the correct governing legal rule from this Court's cases" to "the facts

18   of the particular state prisoner's case," irrespective of whether the decision was "erroneous"

19   or "incorrect."  Id. at 407, 411; Lockyear v. Andrade, 538 U.S. 63, 75-76 (2003); Nunes v.

20   Ramirez-Palmer, 485 F.3d 432, 438 (9th Cir. 2007) ("In order for a federal court to find a

21   state court's application of [the Supreme Court's] precedent 'unreasonable,' the state court's

22   decision must have been more than incorrect or erroneous"), *quoting* Wiggins v. Smith, 539

23   U.S. 510, 520-21 (2003).

24        When no "reasoned state court judgment rejecting a federal claim" against which the

25   federal court can measure the constitutionality of the state court's adjudication of the claim's

26   merits, a federal court must conduct an independent review of the record to determine

27   whether the result was "objectively reasonable." Delgado, 223 F.3d at 982; *see* Himes v.

28   Thompson, 336 F.3d 848, 853 (9th Cir. 2003) ("Independent review of the record is not *de*

*novo* review of the constitutional issue, but rather the only method by which we can determine whether a silent state court decision is objectively unreasonable").  In this case, McClintock's federal claims in Ground Three (ineffective assistance of counsel) and Ground Four (prosecutorial misconduct) were only presented to the California Supreme Court and only on collateral review.  Each of those claims was summarily denied.  In re McClintock, No. S136618, Cal. LEXIS 7246 (Cal. June 14, 2006).  The R&R reflects the independent review of the record associated with those two grounds for habeas relief, as required when there has been no reasoned state court ruling rejecting a federal claim against which the court may apply federal habeas standards.  *Cf.* Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991) (when there is no reasoned decision from the state's highest court, the federal court "looks through" to the last reasoned state-court decision).

## 2.   Reports And Recommendations

A district judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes.  Rule 72(b); *see* 28 U.S.C. § 636(b)(1).  An objecting party may "serve and file specific objections to the proposed findings and recommendations," and "a party may respond to another party's objections."  Rule 72(b).

In reviewing an R&R, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1); United States v. Raddatz, 447 U.S. 667, 676 (1980) (when objections are made, the court must make a *de novo* determination of the factual findings to which there are objections).  "If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law." Orand v. United States, 602 F.2d 207, 208 (9th Cir. 1979).  The court reviews *de novo* the magistrate judge's conclusions of law.  Gates v. Gomez, 60 F.3d 525, 530 (9th Cir. 1995); Robbins v. Carey, 481 F.3d 1143, 1146-47 (9th Cir. 2007) ("determinations of law by the magistrate judge are reviewed *de novo* by both the district court and [the court of appeals]").

**B.    Ground One:  Denial Of Severance Motion And Prior Bad Acts Evidence**

McClintock challenges the state court's denial of his motion to sever the beach and pool molestations from the other charged counts and the use of prior bad acts "propensity" evidence.   He argues the "innocuous touches" were unrelated to counts "aggravated by prior bad acts," so his due process rights were violated, allegedly resulting in a "fundamentally unfair trial."  SAP 13:3-6.  He argues the evidence was "never cross-admissible" and was allegedly "modified" to "fit the prosecutor's story."  SAP 13:11-13.

An error involving misjoinder affects substantial rights, but requires retrial only if the simultaneous trial of more than one offense resulted in actual prejudice.

> Improper joinder [of separate counts] does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.

United States v. Lane, 474 U.S. 438, 446 n.8 (1986) (holding misjoinder is subject to harmless error analysis).

McClintock argues "all acts were explained as non-sexual in content," an explanation the jury obviously rejected with respect to the guilty verdict counts and one falling far short of the required demonstration to satisfy the standards for Section 2254 habeas relief.  He argues "it was not individual acts that convicted the Petitioner of felonious acts, but the 'interference-assumption' over a collection of innocuous acts mitigating into suddenly serous, felonious acts a year later at trial."  SAP 24:20-24.  He insists, despite his acquittal of several charged counts, the "jury could not reasonably have been expected to 'compartmentalize the evidence of one crime to not taint the jury's consideration of another crime' or innocuous act."  SAC 14:17-22, citing Bean v. Calderon, 163 F.3d 1073 (9th Cir. 1998) (holding improper joinder of two indictments deprived that petitioner of a fundamentally fair trial).

However, Bean is distinguishable.  The Bean court found the misjoinder for trial of an indictment for a weak murder case with an indictment for a stronger murder case required reversal of the conviction in the weaker case only.  In concluding the misjoinder deprived defendant of his Fifth Amendment right to a fair trial, the court emphasized it was "mindful that prejudice generally does not arise from joinder when the evidence of each crime is

1    simple and distinct, even in the absence of cross-admissibility" of evidence. <u>Bean</u>, 163 F.3d

2    at 1085, *citing* <u>Drew v. United States</u>, 331 F.2d 85, 91 (D.C. Cir. 1964) ("The federal courts,

3    including our own, have . . . found no prejudicial effect from joinder when the evidence of

4    each crime is simple and distinct, even though such evidence might not have been

5    admissible in separate trials"); *see also* <u>United States v. Johnson</u>, 820 F.2d 1065, 1071 (9th

6    Cir. 1987) ("in light of the relative simplicity of the issues and the straightforward manner of

7    presentation, we conclude that the district court did not abuse its discretion in denying the

8    defendant's motion to sever offenses").  The <u>Bean</u> court reaffirmed the "assumption that, if

9    properly instructed, a jury can compartmentalize the evidence, rather than considering it

10   cumulatively," but found the <u>Bean</u> jury was not properly charged, permitting the prosecution

11   prejudicially to bootstrap the weak murder case to bolster the strong murder case.

12        In McClintock's case, unlike in <u>Bean</u>, acquittal of some joined charges and conviction

13   on others "establishes the jury successfully compartmentalized the evidence." <u>Bean</u>, 163

14   F.3d at 1085, *citing* <u>Featherstone v. Estelle</u>, 948 F.2d 1497, 1503-04 (9th Cir. 1991) (finding

15   joinder of charges caused no fundamental unfairness: "it is apparent from the jury's

16   discerning verdict that it followed the court's instructions to regard each count as separate

17   and distinct").  Moreover, as traced by the Court of Appeal, simple and direct evidence

18   supported the distinct counts against McClintock.  This court finds the discrete acts lent

19   themselves to compartmentalization by the jury, and the presentation and evidence of each

20   crime was simple and distinct, even in the absence of cross-admissibility. His jury acquitted

21   him of seven molestation counts, substantiating they gave individualized attention to each

22   count.  The state court's decision to affirm denial of his motion to sever was accordingly not

23   objectively unreasonable nor contrary to controlling authority elucidating the applicable

24   constitutional standard.  The court accordingly **ADOPTS** the R&R conclusion that even if

25   some of the evidence would not have been cross-admissible, McClintock fails to

26   demonstrate the requisite prejudice for a finding of fundamental unfairness.

27        McClintock also argues under his First Ground that he was denied a fair trial because

28   of allegedly prejudicial and improper prior bad acts evidence presented against him.  SAP

14:24-25. He contends the prosecution improperly relied on CAL. EVID. CODE § 1108 to introduce evidence of prior instances of uncharged sexual molestations in alleged violation of his due process and equal protection rights.[4] He contends "special intent" argument coupled with the inflamatory nature of the child pornography constituted "overkill," whereas a severance would have limited that "prejudicial impact." SAP 15:22-16:12. His argument is unavailing; the half-day of evidence of instances of his prior sexual misconduct, in consideration of the length of his trial, was admissible under CAL. EVID. CODE § 352 and was not a constitutional violation.

McClintock relies in his R&R Objections on Johnson, 820 F.2d 1065 with respect to the use of uncharged crime evidence. That case, however, was not a sexual offense case covered by an evidentiary statute expressly permitting introduction of evidence of commission of other sexual offenses in some circumstances. Moreover, Johnson held evidence of an uncharged third bank robbery *was admissible* against the defendant in his trial for two counts of bank robbery, and the defendant was not entitled to severance of charges, finding the trial court "implicitly balanced the probative value against he prejudicial effect." Id. at 1069 (distinguishing United States v. Green, 648 F.2d 587 (9th Cir. 1981), admitting evidence under Rule 404(b) on the ground the trial court had found the challenged evidence was relevant to knowledge, plan, and motive whereas the reviewing court fund the evidence admissible to prove opportunity, a ruling the trial court never made under FED.R.EVID. 404(b), so it could not have considered the FED.R.EVID. 403 prejudice and probative value factors the court must weigh before admitting the evidence, applying standards similar to the California standards).

McClintock's argument fails to distinguish between admissible evidence that is probative of the charged crimes and unfairly prejudicial propensity evidence introduced for purposes of improperly influencing a jury. Respondent argues there was no reasonable

---

[4] "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not in admissible pursuant to Section 352." CAL. EVID. CODE § 1108(a). Section 1101 addresses the admissibility of character or character trait evidence. Section 352 addresses exclusion of time-consuming, prejudicial, confusing, or misleading evidence.

likelihood the jury convicted McClintock on the basis of the evidence of uncharged prior molestations.  The R&R reports the United States Supreme Court has expressly declined to rule on the constitutionality of the use of propensity evidence (R&R 10:23-28), *citing* Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991) ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the 'prior crimes' evidence to show propensity to commit a charged crime"); *see also* Alberni v. Daniels, 458 F.3d 860, 863-64 (9th Cir. 2006) (observing the Supreme Court expressly reserved determination of the question, and thus there is no "clearly established federal law" a habeas petitioner can rely on for relief).  There remains just the general principle that evidence "so extremely unfair that its admission violates fundamental conceptions of justice" may violate due process. Alberni, 458 F.3d at 864, *quoting* Dowling v. United States, 493 U.S. 342, 352 (1990).

The Court of Appeal rejected McClintock's argument the admission of two prior incidents of molestation as propensity evidence pursuant to CAL. EVID. CODE § 1108 deprived him of due process or a fair trial, finding the jury would not have been inflamed and, as traced below, the prior incidents evidence created no undue prejudice.  Lodg. 6 pp. 10-12. That court also found from the record "strong factors favoring consolidation," not severance. Lodg. 6 at 9.  These included: "the beach and pool counts and bedroom counts not only involved all child molestation charges but also involved an overlapping victim, Brian P.," explaining the cross-admissibility of the relationship evidence; the cross-admissibility of the pornography and molestation counts under CAL. EVID. CODE § 1108 (propensity evidence), and § 1101(b) (as relevant to show intent); the petty theft count was related to the other counts inasmuch as the photographs were of child molestation victims and led to the search of McClintock's home and seizure of the child pornography, so a transactional relationship existed and the evidence would have been admissible at any trial of the child pornography counts; none of the counts was particularly inflammatory relative to any of the others (they involved similar types of touching and none was a violent or forcible offense); "proof of the child pornography and petty theft charges was straightforward and strong;" no reasonable possibility exists the jury might have convicted him of those charges on the basis they

thought he was a child molester rather than based on the simple, strong evidence to support the other types of claims; and the verdicts undercut his prejudice argument because the jury acquitted him of seven child molestation counts.   Lodg. 6 pp. 9-10.

This court agrees with the determinations of the state courts and the Magistrate Judge finding the decision to deny McClintock's Motion to sever was not objectively unreasonable nor contrary to controlling United States Supreme Court authority.  Accordingly, the court **ADOPTS** the R&R in its entirety with respect to Ground One and **DENIES** that basis for relief.

## C.   Ground Two:  Improper Expert Testimony

McClintock's Objections appear to contain no challenge to the R&R analysis or recommendation with respect to SAP Ground Two. The court need not conduct *de novo* review or any lesser review of the facts when no objections are made to the R&R.  Orand, 602 F.2d at 208 ("If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law").  This court has reviewed the Court of Appeal's determination of this issue (Lodg. 6 pp. 12-14) and has reviewed the Magistrate Judge's conclusions of law with respect to admission of expert testimony from Deborah Davies, a licensed clinical social worker and forensic interviewer, after an evidentiary hearing regarding her qualifications and anticipated testimony, and **ADOPTS** the recommendation habeas relief is not warranted under Ground Two.

## D.   Ground Three: Ineffective Assistance Of Counsel

### 1.   Legal Standards

As noted in the R&R, when no "reasoned state court judgment rejecting a federal claim" exists against which the federal court can measure the constitutionality of the state court's adjudication of the merits of the claim, the federal court must conduct an independent review of the record to determine whether the result was "objectively reasonable" and applied correct legal analysis. Delgado v. Lewis, 223 F.3d at 981-82; *see* Himes, 336 F.3d at 853.  The clearly established federal law governing claims of ineffective assistance of counsel ("IAC") is articulated in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail

on an IAC claim, a petitioner must show (1) counsel's errors or omissions resulted from a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney, and (2) counsel's conduct prejudiced the result.  Id. at 687-88, 693.  To show prejudice, the petitioner must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceedings would have been different.  Id. at 693-94.

## 2.   Four Discrete IAC Claims Discernable

McClintock characterizes his counsel's assistance as "riddled with error and incompetence to the point at which it constitutes a violation of the right to have an attorney." SAP 19:22-25. The court rejects any incipient denial of a Sixth Amendment right to counsel claim as inchoate and conclusory.  McClintock acknowledges counsel's authority over tactical and strategic decisions, but superimposes on that flexibility a requirement that he be entitled to "fully inform[] his/her counsel" (SAP 21:5) and "proactively" direct the defense of his case.  He attempts to legitimize his IAC grounds for relief by representing:

> This is not an attempt to say effective counsel is an errorless counsel; nor an ineffective counsel by hindsight. . . .  Petitioner is not questioning counsel's competency, ability, tactical errors, confusion of witnesses with specific facts, failure to object (which may or may not be argued in itself an [sic] inherently tactical); likewise, petitioner has no expectations for any court to: second guess counsel's tactics, grade the counsel's performance, or set rules and specific standards (i.e. a checklist) for guidelines.

SAP 21:6-23.

He summarily alleges his counsel's errors violated his constitutional rights because of the purportedly " 'reasonable probability' of defendable issues" he attempts to assert. SAP 21:14-16.   He advances in hopeful but hopelessly conclusory fashion: "certain witnesses testimonies alone when 'compartmentalized by the jurors' would reveal non-felonious acts of molestation and the jurors would either reduce the charge to a lesser crime or rule not guilty of even the lesser crime," so that "defense counsel's choice of not needing cross-examining details made all the more evident the need for proactive steps by the petitioner during the trial to participate and remain fully attentive," which he contends he was unable to do because of illness, although he attended trial each day.  R&R Obj. 8:15-27. As discussed below, his showing falls short of a cognizable IAC ground for habeas relief.

The R&R identifies in the SAP four discrete areas of alleged defense counsel deficiency, recommending each be rejected for failure to make the requisite showing of prejudice. McClintock never advances beyond unsupported conclusory allegations that but for the alleged deficiencies, the outcome of his trial would have been more favorable to him.

### a.   Permitting Defendant To Be Visibly Restrained

McClintock suggests he was somehow visibly restrained during the trial, but does not specify in what manner or why. He also appears not to have developed that claim in state court. He fails to link his SAP case law discussion to his own circumstances in any manner permitting comparative analysis. *See* SAP pp. 22-23. The issue of restraints only appears in his statement of his IAC claim. Unless the use of restraints actually prejudiced his trial, McClintock's argument defense counsel's purported failure to object to their use cannot rise to the level of a constitutional violation.

The R&R observes McClintock "offers nothing to support the allegation that he was visibly restrained," but assuming, *arguendo*, he was restrained "and that counsel's failure to object to Petitioner's restraints was deficient [performance], Petitioner has not met his burden of demonstrating prejudice." R&R 21:21-24. The jury acquitted him of several charged counts, demonstrating they gave individualized attention to each charge rather than adopting some generalized adverse conclusion they drew from his appearance. He in no way describes how any physical restraint interfered with his "ability to partake in his defense proactively." SAP 22:26-28. Thus, not only does he fail to show he experienced "such unnecessary, unmerited displays *by the court*" (SAP 22:26-27 (emphasis added)), but also he fails to elaborate either his counsel's purported involvement in such "displays" or prejudice in the verdicts resulting from counsel's alleged failure to object.

McClintock's Objections to the R&R allude in passing only once to his having been "visibly chained" with a reiteration that he "knew the case – the details of the events and individuals – and had no intention to play a passive role while visibly chained." R&R Obj. 7:20-22. The court can only surmise he needed to be rendered more "passive" by some court intervention not attributable to his counsel's conduct, but the claim is entirely inchoate.

The court accordingly **ADOPTS** the R&R recommendation this theory be rejected as a legitimate ground for habeas relief.

### b. Failure To Adequately Investigate

While disclaiming his IAC ground for relief arises from tactical or strategic choices his counsel made, his specific complaints about her conduct reveal otherwise.  McClintock represents: "Petitioner's counsel did limited investigations, and the little that was done was never followed through." SAP 23:4-5.   In particular, he alleges, among other things: "mitigating testimonies by witnesses and experts were neither sought after nor attempted," such as from "lifeguards at specific sites where the 'felonious acts' occurred; adult and child psychologists; police records of existing temporary restraining orders against particular individuals – not against petitioner – who regularly entered two of the children's home late at night; . . . and a computer technician[] to explain to jurors about: Bot. files, rapid loading, and adult entertainment terminology from legal adult web-sites, and the virtualness of pixels and the way images were modified by the prosecutor." SAP 22:4-18.

Grossly deficient preparation for trial or a complete failure to investigate may give rise to a viable IAC claim.  However, McClintock's complaints about his representation are on their face either tactical or strategic choices within the scope of decisions reasonably competent counsel can legitimately make (*e.g.*, whether to call expert witnesses to testify and the like), or are explained by inadvertence (*e.g.* the occasional confusion of one victim's name for another's), and all are demonstrably harmless in consideration of the entire body of evidence presented to the jury.  He does not support his claim of failure to perform pre-trial investigation, as opposed to simply electing not to present as part of the defense case certain potentially plausible kinds of witnesses McClintock suggests could have been called. Counsel's decision not to put on certain witnesses does not show the decision was the result of failure to investigate rather than conscious choice predicated on the results of the investigations or some other reasonable tactical decision.  Moreover, as in this case, "[w]hen the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery she or he now claims was

necessary, an ineffective assistance of counsel claim fails." <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1088 (9th Cir. 2001).  Furthermore, "ineffective assistance of counsel claims based on a duty to investigate must be considered in the light of the strength of the government's case." <u>Eggleston v. United States</u>, 798 F.2d 374, 376 (9th Cir. 1986).

The R&R notes McClintock fails to provide any indication what the purportedly erroneously omitted witnesses would have offered as their testimonial evidence.  Claims of failure to investigate must be supported by a showing of the information that would have been obtained through the investigation and, assuming the evidence to be admissible, how it would have produced a different result. *See, e.g.* <u>Hovey v. Ayers</u>, 458 F.3d 892, 909 (9th Cir. 2006).  As McClintock proffers no indication of what information could have been but was not elicited, or how the information would changed the result of his trial, he has not satisfied an element required to prevail on an IAC claim. The R&R recommendation to reject this theory of IAC relief is accordingly **ADOPTED**.

### c.   Inattentiveness

McClintock alleges his claims of "trial errors" show his counsel's "pattern of inattentiveness." SAP 23:19-20. He cites such examples as allegedly forgetting crucial facts *in preparing for* cross-examinations, mixing the facts with different witnesses, and failing to impeach testifying witnesses with their prior statements to police or social workers.  SAP 23:20-23.  He also appears to suggest his counsel did not notice he was allegedly in restraints during voir dire and at trial because she allegedly did not object, as he includes his argument about the restraints in the "inattentiveness" portion of his IAC claim. SAP pp. 23-24.  He summarily contends "defense counsel [was] not in tune to the details" in the evidentiary record so "did not serve defendant effectively."  R&R Obj. 8:15-17.

On the one hand, McClintock criticizes his counsel for an imperfect grasp of all the details associated with each victim and each of the multiple instances of alleged molestation and the like, while on the other hand asserting:  his counsel's " 'flight plan[]' did not necessitate the need for details. . . ."  R&R Obj. 8:15-18.  The vagueness of his allegations of deficient performance due to counsel's "inattentiveness" prevents any finding either prong

1    of the Strickland test is satisfied.  The court accordingly **ADOPTS** the R&R recommendation

2    habeas relief be denied on that IAC theory.

3                    **d.      Failure To Counter Inconsistencies In Witness Testimony**

4           Despite his SAP preamble to the IAC claim contending he is not challenging defense

5    counsel's trial tactics or strategy, McClintock's complaints are mostly that.  For example, he

6    criticizes his counsel for failing to impeach witnesses' testimony with prior statements they

7    gave to police or social workers at interviews during the investigation of the charged acts of

8    child molestation.  SAP 23:21-23.  He fails, however, to isolate any particular witness or any

9    particular testimonial evidence where any material inconsistency occurred, other than Ms.

10   Shores' and her sons' initial representations to authorities that they did not think McClintock

11   did anything wrong.  All three, however, later recanted that opinion.  Apparently, McClintock

12   thinks they should be bound by an initial expression of an opinion despite their explanations

13   at trial for that discrepancy.  *See* Brady discussion under Ground Four, below.  Moreover,

14   if McClintock intends to refer to some particular victim's testimony, dealing with young or

15   vulnerable witnesses at trial often requires less prolonged or probing cross-examination

16   particularly likely to upset or confuse the witness, a result which also risks eliciting testimony

17   more damaging than helpful to the defense.  Absent any particularity to support his criticism

18   of counsel's cross-examinations, the deferential standard of Strickland scrutiny is not

19   satisfied.  Strickland, 466 U.S. at 689 ("a court must indulge a strong presumption that

20   counsel's conduct falls within the wide range of reasonable professional assistance," a

21   presumption that the defendant must show should not be "considered sound trial strategy").

22   McClintock neither identifies particular instances of inconsistent testimony nor how any such

23   impeaching evidence could have altered the result at trial.

24          Considering McClintock's IAC theories individually and cumulatively, the court finds

25   he fails to show any reasonable probability that but for counsel's alleged errors, the result

26   would have been different.  Strickland, 466 U.S. 688.  Accordingly, the court **ADOPTS** the

27   R&R recommendation habeas relief be denied on IAC grounds.

28   \\

**E.      Ground Four: Prosecutorial Misconduct**

**1.      Legal Standard**

A habeas petitioner can prevail on a claim for relief due to prosecutorial misconduct only upon a showing first, the prosecutor's alleged conduct was improper, and second, the misconduct so infected the trial with unfairness as to render the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168, 181 (1986); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

**2.      Trial Publicity**

McClintock alleges he was denied a fair trial due to the prosecutor's purported feeding of unspecified misinformation to news media before trial:  "Petitioner entered his trial depicted as a thief, a liar, and a homosexual." Pet. 26:23-27.  He provides no specificity in support of that contention.  Even assuming he presented this claim in state court as an alleged federal constitutional violation, such conclusory characterizations fall short of the factual showing necessary to raise even a colorable claim of prosecutorial misconduct associated with pretrial publicity.  He directs the court to no particular newspaper or other media publicity about his case to support such a contention.  The claim is devoid of any specificity from which the court could decide whether any remarks or communications from the prosecutory to the media were improper, let alone whether they resulted in an unfair trial. Boehme v. Maxwell, 423 F.2d 1056, 1058 (9th Cir. 1970) ("Allegations of fact, rather than conclusions, are required"); see also Tam v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005). The court need not reach the issue in the absence of "proper allegations of fact showing that the alleged newspaper articles in fact violated the precepts stated in Sheppard v. Maxwell, 284 U.S. 333 (1966) and its offspring." Boehme, 423 F.2d at 1058 (full citation omitted). The court **ADOPTS** the R&R recommendation the court find McClintock has not identified any particular conduct by the prosecutor on this theory, let alone shown misconduct that so infected his trial with unfairness as to have denied him due process.

**3.      Redacting Taped Interviews With Two Minor Victims**

McClintock alleges the prosecutor edited out "pertinent portions of the social worker

[video]tape interviews with Brian P. and Steven P. which *confirm testimony* of the temporary restraining order filed by their mother against an 'old boyfriend, Mike' because he kept entering our room at night." Pet. p. 27 (emphasis added). He apparently seeks to have the court infer that had the boys' recorded interview "confirmation" been played to the jury, it would have suggested Mike rather than he was the actual abuser. However, the manner of his presentation of the claim suggests there was testimony at trial on the TRO issue. Moreover, as substantiated in the R&R from the trial record, the redactions were known to McClintock's counsel and were discussed at a sidebar associated with Ms. Shore's testimony.   In fact, at least the redaction of the Brian P. videotape was "based upon Petitioner's request to exclude statements the child made about being afraid of Petitioner coming over to his house." R&R 12:24-26, *citing* Lodg. 2 at 161-165, 545.  The court gave McClintock's counsel the opportunity to object to the redactions before the video tapes were played to the jury and received a stipulation instead, presumably because associated testimony could harm the defense. Lodg. 2 at 589. Even though McClintock represents in his R&R Objections *he* objected to the redaction and communicated that opinion to his counsel (R&R Obj. 12:14-20), defense counsel is not required to adopt a client's preferences in matters of evidentiary decisions or trial strategy.

This court finds on the record as a whole the boys' alleged testimony they feared their mother's boyfriend "Mike" coming into their bedrooms at night could not have operated to exonerate McClintock from the charges he molested those and other boys.  McClintock acknowledges he went to the boys' room to say goodnight around 9 p.m. during the time he was with their mother, removing any inference the boys could only have meant "Mike," not McClintock, was ever there.  Obj. 8:7-9.  The court **ADOPTS** the R&R recommendation it find the redactions in these circumstances do not support even an inference the prosecutor thereby so infected the trial with unfairness as to render McClintock's his conviction a denial of due process.  R&R 24:13-16, *citing* Darden, 477 U.S. at 181.

\\

\\

### 4.      Key Police Witness Was Not "Withheld"

In his R&R Objections, McClintock reprises his allegation the "prosecutor committed misconduct because she knowingly, purposely, and deliberately withheld exculpatory evidence" in the form of testimony from Detective Pike of the Chula Vista Police Department. He alleges a Brady violation on grounds it "was only confirmed post-trial" that Detective Pike got from Ms Shore a purportedly "emphatic denial of any offensive behavior of the twins," whereas the prosecutor "knowingly kept him from relaying those facts before trial." R&R Obj. 13:22-14:4; *see* Brady v. Maryland, 373 U.S. 83, 87 (1963).   McClintock alleges the prosecutor "knew of this exculpatory detail[]" but failed to disclose it, purportedly because she "knew such testimony would have hurt her campaign" to obtain a conviction.  R&R Obj. 14:8-9.  He contends Detective Pike would have been included on his own witness list "if such exculpatory evidence was known and confirmed."  R&R Obj. 14:4-7.  The latter representation goes to a trial strategy or tactic over which McClintock would not have exercised primary control, and he presumes Detective Pike had no damaging evidence that could have been elicited at trial had he been called as a witness by either side.  Moreover, defense counsel actually questioned the lead detective in the case, Mike Helvie, about Detective Pike's involvement.  Lodg. 2 at 878.

To prevail on a Brady violation theory, the defendant must show: (1) the evidence at issue is favorable to the defendant, either because it is exculpatory or impeaching; (2) such evidence was suppressed by the state when it should have been but was not produced; and (3) the suppressed evidence was material to his guilt or punishment.  *See* Strickler v. Greene, 527 U.S. 263, 281-82 (1999) ("such evidence is material 'if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different'"), *quoting* United States v. Bagley, 473 U.S. 667, 676 (1985); *see also* Paradise v. Arave, 130 F.3d 385, 392 (9th Cir. 1997).

McClintock was fully aware of Detective Pike's existence, of the officer's familiarity with him personally, and of the initial denial of offensive conduct Ms. Shores and her sons made to police before trial because Ms. Shores herself told him. SAP 27:8-19 (Ms. Shores

1   "told him of Mr. Pike's queries immediately" and told him at the time she told Detective Pike

2   she and her sons "emphatically denied any offensive behavior").  He identifies Detective

3   Pike as "the primary investigator of McClintock v. Sigler divorce and custody trial for over two

4   years – just prior to Petitioner's arrest." Pet. 27:8-10.  He imputes to the prosecution a duty

5   to call Detective Pike as a trial witness.  The prosecutor not only had no such duty,

6   McClintock's actual knowledge of the allegedly suppressed information defeats his claim of

7   a Brady violation, and he presumably had equal subpoena access to Detective Pike.[5]  R&R

8   Obj. 14:10-17.  Ms. Shores and her sons, as trial witnesses, were available for cross-

9   examination.  All three admitted the boys initially denied being touched (Lodg. 2 at 259, 349-

10  50, 550-53), dissolving any argument Detective Pike's testimony confirming their initial

11  statements could have provided valuable impeachment evidence or was so material a

12  different result would have been "reasonably probable" had he testified to simply corroborate

13  the Shores' family's admissions.[6]  See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995)

14  (conclusory allegations with no reference to the record or documentation such as an affidavit

15  cannot support habeas relief); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("conclusory

16  allegations which are not supported by a statement of specific facts do not warrant habeas

17  relief").  This court is not remotely persuaded, even had the evidence not been known to the

18  defense, disclosure would have altered the result of his trial.  See Kyles v. Whitley, 514 U.S.

19  419, 433-34 (1995); Bagley, 473 U.S. at 682.

20       The facts as McClintock alleges them to be defeat the Brady element the government

21  suppressed exculpatory evidence.  See Raley v. Ylst, 470 F.3d 792, 804 99th Cir. 2006)

22  ("Where the defendant is aware of the essential facts enabling him to take advantage of any

23  exculpatory evidence, the Government does not commit a Brady violation by not bringing the

24

25       [5]  McClintock's new argument in his Objections to the R&R does not change the analysis or
    result.  He contends "Ms. Shores informed Petitioner that a police friend asked questions but the

26  identity of 'Mr. Pike' as that individual was not revealed /confirmed until after trial." R&R Obj. p. 14
    fn.  Moreover, he could have asked her the name of her "police friend" at the time, and he indicates

27  he himself had known Detective Pike for at least two years prior to his arrest.

28       [6]  The court rejects as gratuitous and immaterial McClintock's self-serving representation
    Detective Pike would have made a good witness because he purportedly "knew of multiple false
    reports by petitioner's ex-spouse. . . ." SAP p. 27.

1   evidence to the attention of the defense") (citations omitted). The court **ADOPTS** the R&R

2   recommendation prosecutorial misconduct amounting to a constitutional violation cannot be

3   found on this ground.

4                        **5.     Coaching Minor Witnesses**

5        The R&R demonstrates the record reflects the prosecution arranged for Ms. Shores

6   to go a hotel and to be monitored to ensure she would be sober for her trial testimony. Lodg.

7   2 at 514.  Both the court and defense counsel were informed of the placement, without

8   objection. Id.  McClintock attempts no showing how that conduct prejudiced his defense in

9   any way, but for an unsupported inference the prosecutor's motive was to isolate her minor

10  boys to "coach" them for their trial testimony while separated from their mother. SAP 27:25-

11  28:1.  He argues the desired inference should be "confirmed by the children's exact use of

12  [unspecified] terminology during trial." SAP 27:28-28:1.  He reprises the same vague and

13  conclusory argument in his R&R Objections, adding he relies on purported "**inconsistencies**

14  in the boy's use of language," contending " 'their words' were simply Ms. Prior's words." R&R

15  Obj.  14:18-22 (emphasis added).   He does not identify what "words" he refers to, nor how

16  those words were used in testimony that in any way can be imputed to prosecutorial

17  misconduct. He offers no specific facts to substantiate his suspicions. See James, 24 F.3d

18  at 26.  Accordingly, the court **ADOPTS** the R&R recommendation habeas relief on this

19  theory of prosecutorial misconduct be denied.

20                        **6.     Permitting Witness Communications**

21       McClintock contends the "prosecutor. . . permitted intercommunication between

22  witnesses prior to and during the trial," adding only:  "[n]otably on the record was the

23  intercommunication between petitioner's ex-spouse with the other witnesses." SAP 28:1-5.

24  The R&R carefully culls from the record the apparent target of McClintock's allegations, a

25  communication from Brian D. Moore, a prosecution witness who testified McClintock sexually

26  molested him when he was thirteen.  Lodg. 2 at 621-23.  Mr. Moore asked the prosecutor

27  for permission to say "hello to the mom and the other victim," then introduced himself to

28  them and exchange a few words, outside his testimonial presence at the trial. Lodg. 2 at

634-35.  His actual testimony was subject to cross-examination with the opportunity for the defense to expose any bias.  Id.  McClintock also pretends his ex-wife or the Moore family communicated six months prior to trial (Traverse at 20), but he does not show how any such communication could be construed as so infecting his trial as to render it fundamentally unfair.  The R&R confirms the record does not support McClintock's allegation his ex-wife also communicated with a juror, citing Lodg. 2 at 1168, where a juror approached the District Attorney's investigator to ask permission to speak with Ms. Sigler after the case concluded.  The juror never spoke with Ms. Sigler directly.  R&R 28:19-24.  The court **ADOPTS** the R&R recommendation nothing in these theories of prosecutorial  misconduct can support federal habeas relief.

### 7.   *Ex Parte* **Chambers Meeting With Judge**

McClintock attacks an unsubstantiated *ex parte* communication by the prosecutor with the trial judge he identifies as having involved the court's review, before his counsel arrived, of 15 "virtual images used as evidence."  SAP 28:6-12.  He concedes this alleged event occurred "before commencement of trial," and he acknowledges "the judge's right to review evidence prior to trial."  SAP 28:9-13.  He relies for this theory on the "inflammatory" nature of that evidence and the alleged timing of the review when the "evidence had not yet been cross-reviewed and was not available anywhere but the prosecutor's personal 'lap-top' computer in her own Files/Subdirectories," to suggest the prosecutor's "walk-through" of "the evidence with the judge alone *raises more than just subtle concern for misconduct* to parties involved."  SAP 28:13-21 (emphasis added).  The R&R finds "[n]othing in the record indicates [the trial judge] reviewed the images with the prosecutor, but not defense counsel, present."  R&R 29:9-10.  Moreover, the alleged prejudice is insufficient to support relief.

Even assuming the *ex parte* review occurred, the judge was not the trier of fact at McClintock's trial.  Any impressions the judge personally may have formed of the evidence at that time, or at any other time, had no bearing on the verdicts.  McClintock does not contend his counsel never had an opportunity to review and object to any of that evidence before trial.  In fact, the Magistrate Judge's independent review of the record revealed

McClintock's representation the images were solely contained in the prosecutor's computer directories is untrue.   Rather, "the images were burned on a computer disc and sealed as exhibit nine."  R&R 29:4-6, *citing* Lodg. 1 at 519, 531.  The record reveals Exhibit 9 was unsealed and reviewed by the judge prior to defense counsel's motion to dismiss the child pornography counts.  Lodg. 1 at 531; Lodg. 2 at 15.

A petitioner must do more than surpass "just subtle concern" that an incident associated with trial was improper in order to raise any cognizable constitutional issue. McClintock makes no showing how such an *ex parte* incident could have prejudiced his trial or in what manner some error of constitutional magnitude could be eked out from the alleged event.  The court **ADOPTS** the R&R recommendation this theory be rejected as providing any ground for habeas relief, both because the contentions lack evidentiary support and, even if the incident occurred and even if it were improper, the court finds it could only be construed as harmless.

### 8.   Allegedly Modified Evidence

McClintock also alleges prosecutorial misconduct in the form of displaying titles of web sites without the images, or formatting web images to fit a computer screen, which allegedly took photos out of context and misled the jury, including through inferences of homosexuality, thus violating his due process and fair trial rights. [7]  The R&R highlights the speculative nature of McClintock's imputation to the jury of thoughts and beliefs not supported by any evidence, the lack of any explanation how the formatting of images to fit a computer screen (even if that resulted in any modification of the image) constitutes actionable "misconduct."   The fact of defense counsel's access to, discussion of, and acquiescence in admitting evidence of the website titles without objection undermines his allegations of reversible error for prosecutorial misconduct.   Nothing in McClintock's

---

[7]   The R&R clarifies the actual genesis of  McClintock's claim the prosecutor disobeyed the court's order to draw no inferences of his sexual orientation from the websites he frequented. "Although a prosecution witness made unsolicited references to 'gay porn sites, sexually-oriented sites' (Lodgment 2 at 929), the trial court cured any error or potential prejudice by striking portions of the witness' testimony. (Lodgment 2 at 1005-06). Further, the parties stipulated that the reference to gay materials was really a reference to 'images on web sites involving sexual activities between male children.' (Id.)."  R&R 30:2-8.

Objections to the R&R alters this court's determination to **ADOPT** the recommendation habeas relief on this theory must be denied.

### 9.   No Constitutional Violation Cumulatively

McClintock contends the "flagrant and collective behavior in front of jurors" and the "use of deception or unambiguous reprehensible methods to attempt to persuade either the court or the jury is unconstitutional – irregardless of any objections or not." SAP 26:3-10. That is an incorrect statement of the law, especially when applied to "methods" he has not shown were so "deceptive" or "reprehensible" as to have infringed his constitutional rights. Considering each area or instance of alleged prosecutorial misconduct individually, the court has adopted the recommended finding none standing alone so infected McClintock's trial with unfairness as to constitute a violation of his due process or fair trial rights. The court also assesses the cumulative effect of the discrete instances of alleged misconduct. Taken together, and assuming for this narrow purpose the alleged misconduct occurred, the court finds the effects were innocuous and did not prejudice him at trial, in the face of the quantity and quality of evidence against him, the jury instructions, and admonitions of the court. It is well settled defendants are not guaranteed perfect trials, only fair ones.

### F.   Ground Five:  Refusal To Grant Continuance When Defendant Ill

McClintock was taken ill in the presence of the jury during his trial, on a Friday.  He was treated with fluids over the weekend.  Trial resumed the following Monday after the judge observed he looked much improved from the week before. The court denied a motion for continuance, having obtained a medical report of McClintock's fitness to continue. McClintock nevertheless alleges the "OK for trial" physician's order was made "without any examinations." SAP 30:26-27.  McClintock had attributed his stomach distress to having eaten tainted food one week prior to trial.  He contends his condition worsened by mid-trial. He contends he was "subsequently diagnosed having active hepatitis" (SAP 30:8-24), but simultaneously contends "to date, Petitioner never has been seen by a physician" and the order of a "'STAT abdomen x-ray' to date never was done" (SAP 30:27-31:1).  He admits he "received 8 liters of I.V. fluids" over that weekend, "but still not seen by any physician nor any

diagnosis." SAP 31:10-12. The record reflects he notified the court on September 30, 2002, after the jury began deliberating, of his Hepatitis A diagnosis. Lodg. 2 at 1296. The record also reflects he remained cleared for trial by the medical team at all times, and the court found him fit to proceed. Lodg. 2 at 1295-96.

McClintock protests his illness introduced a "structural defect" in the trial proceedings purportedly warranting "reversal *per se.*" SAP 32:1-7. His authority for that proposition actually supports an opposite conclusion. *See, e.g.*, United States v. Brown, 821 F.2d 986 (4th Cir. 1987) ("For a denial of a continuance to constitute an abuse of discretion. . . the impending trial must pose a substantial danger to a defendant's life or health"), *citing* United States v. Daly, 716 F.2d 1499, 1511 (9th Cir. 1983). Even if the trial court had abused its discretion, habeas relief requires a petitioner to show a resulting constitutional violation. As noted in the R&R, clearly established federal law commits to the trial judge's discretion the determination whether or not to grant a continuance. Ungar v. Sarafite, 376 U.S. 575, 589 (1964) (only if a continuance is so arbitrary in the particular circumstances as to violate due process will a cognizable constitutional issue arise). Challenges to the denial of a continuance must be viewed from the perspective of "the reasons presented to the trial judge at the time the request was denied." Id. at 589-90.

The record reveals the court properly considered its own observations of the defendant in the courtroom and a medical opinion he was "okay for trial." McClintock clearly understood the nature of the charges against him, he conferred with this counsel before and during trial, and the nature of his discomfort does not suggest he would be "unable to properly and adequately assist his lawyers in the defense of his case." United States v. Silverthorne, 430 F.2d 675, 677 (9th Cir. 1970) ("continuance of a criminal trial based upon physical disability is within the sound discretion of the trial judge"). McClintock's argument he has a "fundamental right to play a proactive role in his defense" but was constrained to "play a passive role" (R&R Obj. 7:18-22) raises no constitutional concern. He was represented by competent counsel at his trial, and his IAC allegations are rejected above. \\

The Court of Appeal carefully reviewed McClintock's challenge to the denial of a continuance to determine "whether [the] denial was so arbitrary as to deny due process" by looking to "the circumstances of the case and the reasons presented for the request." Lodg. p. 16, *citing* People v. Frye, 18 Cal.4th 894, 1012-1013 (1998) (applying Ungar, 376 U.S. 575). That court concluded McClintock's illness did not prevent him from being "mentally present" at his trial and "able to assist his counsel," a standard comparable to the federal standard. Id., *citing* People v. Rogers, 150 Cal.App.2d 403, 410-12 (1957), His trial judge found, despite McClintock's obvious illness, he had visibly improved by the following Monday after he had received intravenous fluids and was cleared by medical staff for trial. Lodg. 6 p. 16. From the record, it is apparent "he was able to participate in the proceedings; he took notes and conferred with his counsel during the proceedings;" the following day "he was in a sufficiently good condition to be able to talk and laugh with the bailiff;" and at "no time, even after he was diagnosed with Hepatitis A, was McClintock not cleared for trial," foreclosing any reasonable conclusion McClintock's condition so prevented him from participating in his own defense as to have denied him due process. Lodg. 6 p. 16. The court rejects his contention his illness interfered with some constitutional right to be "proactive" when he could not direct the presentation of his defense in the detail he wished.

McClintock does not show the state court's determination on this claim was contrary to, or an unreasonable application of clearly established federal law, or that the decision was so arbitrary as to have denied McClintock a fair trial. As traced in the R&R, the trial court relied for its determination to deny a continuance on: a fax from the jail's attending physician informing the court he was "okay for court;" the court's own observation McClintock's appearance had improved over the weekend; at the conclusion of the Monday court session, the court stated on the record McClintock had not manifested "ill behavior;" and his trial counsel stated she had no indication he was unable to meaningfully assist in evaluating and conceptualizing the evidence. R&R pp. 12-13. For all the foregoing reasons, the court **ADOPTS** the R&R recommendation habeas relief be denied on the ground of prejudicial denial of a continuance.

**G.    Ground Six: Sentence Length Constitutes Cruel And Unusual Punishment**

McClintock contends his sentence of 30 years to life violates the Eighth Amendment because the punishment is excessive based on the absence of any prior criminal record, his "lifetime in the medical/surgical field," his "contributions to society locally, nationally, and internationally," disproportionality of the sentence compared to the gravity of the offense, the nature of the offenses "otherwise innocuous and passive" compared to "rape and murder," and the like.  SAP pp. 33-35.  Respondent (and the Court of Appeal) recharacterized the actual circumstances and jury findings as demonstrating McClintock's "abuse of a position of trust to repeatedly molest young boys over a period of years, as well as Petitioner's continued inability to accept responsibility for his illegal behavior." Ans. at 36; Lodg. 6; *see* R&R 13:20-26.  That court found the record substantiated McClintock habitually molested boys, and the lewd acts did not involve mere "grooming" as he attempted to argue.  Lodg. 6 at 18-19. McClintock objects to the R&R recommendation by simply rearguing the innocence of his conduct, contending Respondent's characterization "is neither true nor consistent with the testimonies," as there "was never any covert attempts of concealing any acts because the acts were nothing that defendant needed to conceal." R&R Obj. 12:1-11.

The United States Supreme Court discussed the standards for Eighth Amendment habeas review in the sentencing context in Lockyear, 538 U.S. 63, acknowledging its precedents in the area "have not been a model of clarity."  "[T]he only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id. at 73, *quoting and applying* Harmelin v. Michigan, 501 U.S. 957, 998 (1991) (Kennedy, J., concurring) (supplying the proportionality principles applicable to all Eighth Amendment sentencing challenges, including outside the recidivist context).  The Lockyear Court "makes no mention of any constitutional imperative requiring that courts make the various intra- and inter-jurisdictional comparisons recommended by" the Court in Solem v. Helm, 463 U.S. 277 (1983); *see* Nunes, 485 F.3d at 438.

1    "[S]uccessful challenges to sentencing proportionality are exceedingly rare." <u>Ramirez</u>
2    <u>v. Castro</u> 365 F.3d 755, 760 (9th Cir. 2004).   The <u>Ramirez</u> court held that petitioner's most
3    recent offense, the nonviolent shoplift of a $199 VCR, chargeable as a "wobbler" felony only
4    by virtue of his prior theft-related conviction and for which he was sentenced to 25 years in
5    prison, was punished with an extreme sentence not justified by the gravity of his offense due
6    to the relatively minor nature of his recidivist history, in consideration of <u>Rummel v. Estelle</u>,
7    445 U.S. 263 (1980), <u>Solem,</u> 463 U.S. 277, <u>Ewing v. California</u>, 538 U.S. 11, 15-17 (2003),
8    <u>Harmelin</u>, 501 U.S. 957, and <u>Lockyear</u>, 538 U.S. 63.   Once "gross disproportionality" of the
9    sentence is established, federal reviewing courts examine whether the decision was contrary
10   to or an unreasonable application of clearly established United States Supreme Court
11   authority.   <u>Ramirez</u>, 365 F.3d at 773-75.   Unlike in <u>Ramirez</u>, this court does not find "gross
12   disproportionality" to be an issue.   McClintock was not sentenced as a recidivist offender
13   under California's Three Strikes law.   Rather, the sentence he received was for his multiple
14   specific convictions in the same case for abuse of minor boys and child pornography
15   possession, among other things.   Whereas the <u>Ramirez</u> court was able to conclude neither
16   the gravity of that defendant's "wobbler" offense nor of his past two offenses could justify a
17   25-year sentence, McClintock's convictions permit no such minimizing analysis.   His multiple-
18   count convictions amply support the sentence he received, and most of the individual count
19   sentences were ordered served concurrently.

20         This court is unable to conclude McClintock's sentence is cruel and unusual for
21   habeas relief purposes.   The state court results upholding the sentence were not objectively
22   unreasonable nor contrary to controlling authority, in consideration of the number and nature
23   of the crimes of which McClintock was convicted, the proven duration of the conduct, the
24   abuse of a position of trust as a physician, and the like.   See Lodg. 6 at 18-19.   Moreover,
25   as noted in the R&R, the trial court expressly considered and credited McClintock's lack of
26   prior convictions and his professional achievements, choosing to run most of the sentences
27   concurrently rather than consecutively.   The Court of Appeal amply demonstrated
28   McClintock's is not "one of those extremely rare cases" warranting relief based on a

proportionality challenge.  Lodg. 6 p. 17.  In particular, although he had no prior criminal convictions, court noted "the evidence presented at trial shows these were not his first molestations," as he "had molested at least two other boys in two other states in 1994." Lodg. 6 p. 18.   The case involved multiple molestations of multiple victims occurring over a period of years, and "the record belies McClintock's assertion 'he is simply not a recidivist'" because "the record shows McClintock habitually molested boys." Lodge 6, p. 18.  That court also reasonably rejected his characterization that he was being imprisoned for his "'addiction' -- that is, for being a pedophile." Lodg. 6 p. 19.  Rather he "is being imprisoned because he took the further steps of seeking out and possessing child pornography and committing lewd acts on innocent children."  Id.

All the considerations before the state courts and their objectively reasonable conclusions in selecting, imposing, and upholding the sentence preclude a finding the sentence should be disturbed on collateral review for any Eight Amendment violation. Accordingly, the court **ADOPTS** the R&R recommendation habeas relief be denied on this ground.

## III.    CONCLUSION AND ORDER

For all the foregoing reasons, **IT IS HEREBY ORDERED** Petitioner's Objections to the R&R are **OVERRULED**, the recommendation the Petition be denied is **ADOPTED**, and the Petition is hereby **DENIED**, terminating this case in its entirety.

**IT IS SO ORDERED**.

DATED:  April 22, 2008

**HONORABLE LARRY ALAN BURNS**
United States District Judge